**In the interest of MELANIE GARDNER, et al.**

Juvenile Case No. 78-518.

Circuit Court, Marion County.

August 16, 1978.

132

R. Scott Cross, Ocala, for the petitioner, Department of Health and Rehabilitative Services.

Richard A. Belz of Florida Legal Services, Inc., Gainesville, for the respondent, Daniel W. Gardner.

Gary E. Wagner, Inverness, for the intervenor-respondent, James Nelson Hutchinson.

WALLACE E. STURGIS, Jr., Circuit Judge.

*Final order:* This cause was heard by the court upon the Petition for Termination of Parental Rights and Permanent Commitment to HRS for Adoption filed herein by the Department of Health and Rehabilitative Services (hereinafter HRS). The court having heard the evidence presented on May 17 and June 24, 1978, and having considered argument of counsel for all interested parties at the above hearings, as well as the July 31, 1978 hearing, and being otherwise fully advised in the premises, finds and decides as follows —

### Background

Daniel W. Gardner, father of the four minor children herein, was charged with the murder of his wife, the children's mother, and was later convicted thereof. He is now serving a so-called "capital life" sentence whereby he must serve 25 years before he can even be considered for parole.

After Mr. Gardner's arrest the four children were declared dependent and were placed in the temporary care and control of Mr. and Mrs. David Murkerson, paternal aunt and uncle, under the supervision of HRS by order dated August 9, 1973.

Because of their own personal problems Mr. and Mrs. Murkerson decided they could no longer provide for the children and, on August 22, 1975, asked that the children be placed in foster care. This was done by order of court dated August 29, 1975, whereby the children were placed with the Division of Family Services.

Prior to the placement of the children with Mr. and Mrs. Murkerson, various other relatives had also intervened, seeking custody of the children. Among these were James Nelson Hutchinson, the maternal grandfather.

The record is unclear as to why none of the other relatives, including James Nelson Hutchinson, were awarded custody when Mr. and Mrs. Murkerson asked that the children be removed from their custody and placed in foster care. The record is also unclear as to whether or not any of the other relatives, including James Nelson Hutchinson, were notified of this or were even aware of it in time to react to it.

In 1976, HRS petitioned to terminate Mr. Gardner's parental rights, for the purposes of subsequently placing the children for permanent legal adoption, in the fifth judicial circuit court, in and for Citrus County, Case No. 73-48-CJ-A-B-C-D-01.

Very little of consequence ensued thereafter until petitioner moved for a change of venue to this court on February 10, 1978, which was granted on March 22, 1978.

The instant proceedings then began with the filing of a Petition for Termination of Parental Rights and Permanent Commitment to HRS for Adoption, filed by the Department of Health and Rehabilitative Services on April 14, 1978.

During the pendency of this case HRS placed the children in different and varying foster care homes. At the present time the children are in three separate foster homes, with Melanie and Michelle having been placed together.

At the June 24, 1978 hearing this court ruled that Melanie, Wilbur and Kimberly would be placed in the home of their maternal grandfather, James Nelson Hutchinson, under the protective supervision of HRS. This court further ruled that it would terminate the respondent's parental rights with respect to Michelle.

During the July 31, 1978 hearing, which was held to determine the form of the final order in this cause, counsel for all parties concerned presented additional arguments in support of their respective clients. Counsel for the petitioner, HRS, filed a motion for rehearing which was denied after arguments.

However, this court, having again considered all the evidence presented, and all of the arguments of counsel, was of the opinion that it should recede from its earlier decision. As a result, the court decided *not* to terminate the parental rights of the respondent with respect to any of his children. Instead, all four were ordered placed in the home of their maternal grandfather, James Nelson Hutchinson, under the protective supervision of HRS.

### Findings of fact

Because of the long period of time this case has been before the courts, and because of the uniqueness of some aspects of this case, the court makes the following findings of fact —

1. The natural mother of the children is deceased.

2. The natural father, Daniel W. Gardner, is imprisoned and will likely remain so for some years in the future. In any event, it is likely that he will remain imprisoned until all of the minor children herein have reached their majority.

3. The minor children herein are dependent children within the meaning of Chapter 39, Florida Statutes (1977).

4. The father, Daniel W. Gardner, is unfit to be awarded custody of the minor children herein.

5. The maternal grandfather, James Nelson Hutchinson, is a close relative of the minor children herein within the meaning of F.S. §39.11(1)(a)(1977).

6. The maternal grandparents, James Nelson Hutchinson and Betty Lou Hutchinson, are fit, ready, able and willing to be awarded custody of the minor children herein.

7. The maternal grandparents would gladly take all these minor children into their home and love them and care for them as if they were their own children.

8. The testimony of the maternal grandfather, James Nelson Hutchinson shows him to be a good man; honest and forthright. He believes in and practices what are called the old fashioned virtues of self-reliance, care for one's family and hard work. He

further believes that strong discipline tempered with love helps children to grow into responsible adults.

There is no question but that Mr. Hutchinson is not a wealthy man. Nor is there any question that he possesses a great amount of formal schooling, he doesn't.

But, this court finds from the evidence presented that Mr. Hutchinson is able to take these minor children, his grandchildren, into his home and to raise them with love and understanding along with his own children.

9. It would be in the best interest of the minor children herein, and conducive to their welfare, to place them in the custody of their maternal grandfather, James Nelson Hutchinson.

10. It would best serve the moral, emotional, mental and physical welfare of the children, and the best interests of the state, to place them in the custody of their maternal grandfather, James Nelson Hutchinson.

11. Placing the minor children herein in the custody of their maternal grandfather, James Nelson Hutchinson, will assure them care, custody and discipline as nearly as possible equivalent to that which should have been given to them by their parents.

12. Placing the minor children herein in the custody of their maternal grandfather, James Nelson Hutchinson, will preserve and strengthen their family ties.

13. The evidence presented in this case by HRS suggested an abandonment of the children on the part of the respondent father, Daniel W. Gardner, and on the part of the maternal grandfather, James Nelson Hutchinson. However, the facts, as shown by testimony and documentary evidence, are clear that the respondent and the maternal grandparents attempted to communicate with the children (and in the grandparents' case to visit the children). These efforts were repeatedly thwarted by HRS personnel, despite the clear mandate of Fla. Admin. Code Rule 10C-10.26 which covers such matters.

14. The needs of Michelle Lynn Gardner are more acute than the other children. However, the evidence presented by HRS itself in this case regarding Michelle is contradictory. Petitioner's composite exhibit number 3, Mr. Turley's report of June 30, 1977 on Melanie and Michelle says on page 3 that "there seems to be little loyalty to one another," and recommends separate placement. Mr. Turley repeated his recommendation for separate placement at the May 17, 1978 hearing. Transcript, page 89.

Yet, Marion Sumner's statement of May 9, 1978 (also part of petitioner's composite exhibit number 3) states on page 1 that "the girls are close to each other and would be placed together." Further, Mrs. Sumner testified on June 24, 1978 that it would be traumatic to separate Melanie and Michelle. Transcript, pp. 141-142.

There was testimony regarding Michelle's problems, and petitioner's case in chief attempted to portray them all as psychological. But, Marion Sumner's statement of May 9, 1978 (part of petitioner's composite exhibit number 3) says —

> "Michelle does have a kidney problem that requires treatment through Shands [Shands Teaching Hospital at Gainesville]. Her kidneys are immature causing a wetting problem during the day and night."

This problem, immature kidneys, is of course a physical problem which can be treated medically, and is not a psychological problem.

In any event, after reviewing all of the evidence presented the court finds that placement with her siblings in the home of her natural grandfather would be in Michelle's best interests and would be conducive to her physical, mental and psychological health and welfare.

15. The proposed plans by the foster parents to adopt Wilbur and Kimberly are not germane to the instant proceeding and the court properly denied their admission into evidence. These plans might or might not have been pursued but that is irrelevant to the basic questions of the fitness of the maternal grandfather and the best interests and welfare of the children in the instant proceeding.

*Conclusions of law*

The court further finds and concludes that the following relevant provisions of law control the decision in this case —

1. In determining who should be granted custody of a minor child who has been removed from his or her home, the controlling consideration is the welfare and best interests of the child and the best interests of the state.

2. In all cases where the parents of the child are found unfit, the court should award custody of the child to a close relative, if there be one, who is fit, ready, able and willing to be awarded custody.

3. Children in a family should not be separated from each other and distributed to different homes except for the most compelling reasons.

4. This court is empowered to place the children under the protective supervision of HRS in the home of the maternal grandparents, under such reasonable conditions as the court may direct.

5. This court should assure that minor children receive the care, guidance and control which will best serve their moral, emotional, mental and physical welfare and the best interests of the state.

6. This court should endeavor to preserve and strengthen the family ties of minor children whenever possible and to secure for them the custody, care and discipline as nearly equivalent to that which should have been given by their parents.

Therefore, it is hereby ordered and adjudged —

1. That the petition for termination with respect to the four above named children is denied, and the prior commitment of the four children named above to the temporary legal custody of the Department of Health and Rehabilitative Services is hereby concluded, and pursuant to Florida Statute 39.11(1)(a)(1977) the above named children shall be placed under the protective supervision of the Department of Health and Rehabilitative Services in the home of their natural grandfather, James Nelson Hutchinson, with said placement to be effected as soon as possible but not later than August 20, 1978.

2. That petitioner's motion for rehearing filed on July 31, 1978 is denied.

3. That no further motion or petition for rehearing will be entertained by the court, such having been considered at the July 31, 1978 hearing.

4. That petitioner's oral motion at the July 31, 1978 hearing for a stay of this order is denied and no further motions for a stay will be entertained by the court.

5. That this court will retain jurisdiction over the parties to and the subject matter of this action, and a hearing shall be set before this court in January 1979 at which time the court will review the progress of the above named children, examine all alternatives available for further and continued placement of the children, and will make such dispositions and other orders as then appear to be in the children's best interests.